DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court on appeal from a judgment of the Toledo Municipal Court. Appellant, Duane Tillimon, is presenting his second appeal in this case concerning a residential real estate purchase. A review of the pertinent facts and testimony appears below.
 {¶ 2} Appellant, a licensed real estate broker, entered into an agreement to sell a four-bedroom home he owned in Toledo, Ohio, to appellees, Travis and Emma Rideout, on January 20, 2000. Appellant drafted and all parties signed a residential real estate purchase agreement with a land contract addendum. Part of the arrangement was a "work for down payment agreement" memorialized in a "repair addendum", whereby appellees agreed to perform repairs on the house in exchange for a reduced cash down payment. The total down payment was set at $6,000. Appellant paid appellees in advance for the house repairs they agreed to perform, giving them a check for $4,900, which they endorsed and gave back to appellant as partial down payment. Appellees also paid appellant $300 cash toward the down payment, with the remaining $800 to be paid in installments. Appellees and their children moved into the house on or about January 25, 2000.
 {¶ 3} There is some dispute regarding payments made and the terms of the parties' agreement in the months that followed. Appellees claim they submitted three monthly payments to appellant, from February through April 2000, under the terms of the purchase agreement. Appellant claims he received only two. Appellees apparently failed to pay all of the installments of the cash down payment. As a result, appellant never recorded the land installment contract and claims that an actual closing never took place. Appellees also failed to transfer the utility service to their names. Appellees claim that they did not transfer service because appellant offered to keep the utilities in his name, and that they never paid for the utilities they used because they did not receive a bill from appellant.
 {¶ 4} Appellant asserts that in May 2000, he learned from a friend that appellees planned to move elsewhere, and thinking he would not be receiving anymore payments from appellees, he sought their eviction. He began by posting an eviction notice at the property on May 8, 2000. Appellant then filed a landlord's complaint on May 15, 2000, alleging two causes of action, one for eviction and one for damages. Appellant claims that he renegotiated his agreement with appellee, Travis Rideout, over the phone several days later, forming a rental agreement. Appellant produced a letter he allegedly wrote and sent to appellees which laid out the rental terms. However, the parties did not sign a lease and no rental payments were made. In fact, the electricity in the home was disconnected on or about May 18, 2000, forcing appellees to vacate the premises.
 {¶ 5} The magistrate scheduled a June 6, 2000 hearing on the first cause of action. Appellees filed a motion for continuance on June 2, 2000, which stated that they had retained counsel and wished to oppose the eviction. Neither appellees nor their counsel appeared at the June 6 hearing, and the magistrate denied their motion, noting that they had provided no grounds. The magistrate found that appellees were "in default under oral argument [sic] since May 1, 2000 and were served lawful notice to vacate premises." The magistrate entered judgment for appellant for possession, and issued a writ of restitution by default. Trial court Judge C. Allen McConnell adopted the magistrate's decision. The magistrate also set the answer date for the second cause of action for June 14, 2000.
 {¶ 6} Appellees submitted their answer and a counterclaim for breach of contract on June 14, 2000. Appellant then filed a motion for summary judgment which was denied by the trial court on August 3, 2000. The matter proceeded to trial on October 23, 2000.
 {¶ 7} At trial, appellant, appearing pro se, argued that he had a rental agreement with appellees and was within his rights to pursue eviction. Appellees denied there was any discussion of a rental agreement, and claimed they entered into a land contract agreement with appellant in order to buy the property. Testimony was presented indicating that appellees' payments were due on the fifth day of each month, and that the default day was the tenth of each month. Appellees claim they received the eviction notice two days before the May default date according to the terms of the land contract agreement.
 {¶ 8} The trial court found that the agreement constituted a land installment contract agreement, and as such, appellant should have pursued a forfeiture rather than an eviction. The court found that appellant had constructively evicted appellees by turning off their utilities. The court awarded appellees $3,976 in damages on their counterclaim, which represented the amount appellees owed appellant pursuant to the land contract agreement, less what they had already paid during the contractual period.
 {¶ 9} Appellant filed a motion for reconsideration with the trial court in which he argued that the court's award of damages unjustly enriched appellees because they: 1) never completed work on the house for which they were given $4,900 credit; 2) never paid $416.67 in utility bills they incurred while they lived in the house; and 3) left the house in a state of disrepair, costing appellant $520 for cleaning and lawn mowing. Appellant reasoned that he should have received damages in the amount of $1,860.67, which he arrived at by subtracting the three amounts above from the court's original award to appellees.
 {¶ 10} Appellant then filed a notice of appeal with this court in which he argued that the agreement he had with appellees constituted a rental agreement. In holding with the trial court on this issue, we explained in Tillimon v. Rideout (Nov. 30, 2001), 6th Dist. No. L-01-1290:
 {¶ 11} "It is undisputed that this transaction was initially intended to be a land contract sale of real property. * * *
 {¶ 12} "The trial court chose to give greater weight to appellees' testimony, concluding that the terms contained in the purchase agreement and the land contract addendum, together with partial performance, were sufficient to create a valid land contract * * * a determination which we will not disturb." Id.
 {¶ 13} Appellant also argued on appeal that the trial court's issuance of a writ of restitution indicated the existence of an oral lease. This court ruled that the decision underlying the issuance of the writ did indeed preclude relitigation of the agreement issue, noting that appellees had not filed a motion for relief from judgment, and that the trial court had not made an express entry deeming appellees' answer to be a Civ.R. 60(B) motion. The matter was remanded to clarify whether the court intended to treat appellees' answer as a motion for relief from judgment.
 {¶ 14} The trial court issued a judgment entry March 6, 2002, explaining that "[t]he Court's intentions were to allow the answer filed by the Defendants to serve as a Civ.R. 60(B) Motion, therein, setting aside the earlier Judgment rendered by the Court. Therefore, the ruling finding of this Court is affirmed that there was a valid land installment contract in existence between the parties, thereby, supporting the finding that the Plaintiff was in violation of the land installment contract."
 {¶ 15} It is from this judgment entry that appellant appeals, setting forth the following assignments of error:
 {¶ 16} "I. The trial court committed reversable error when it allowed the issues of the first cause of action to be re-litigated as part of the second cause of action in the forcible entry and detainer action.
 {¶ 17} "II. The trial court committed reversible error when it decided that the appellant had constructively evicted the appellees from the premises.
 {¶ 18} "III. The trial court committed reversible error when it incorrectly calculated the damages awarded in the case based on the evidence of record in the case."
 {¶ 19} In his first assignment of error, appellant asserts that appellees' answer did not meet the requirements of a Civ.R. 60(B) motion, and therefore the trial court erred in allowing the agreement issue to be relitigated at trial. Appellant further argues that the default judgment he received became the "law of the case" and the doctrine of res judicata prevented relitigation of the basis of his complaint. However, having thoroughly examined the record in this case, we have found that certain procedural errors occurred causing such substantial and material prejudice to appellees that they constituted plain error and deprived the court of the authority to enter a judgment pursuant to Civ.R. 55(A).
 {¶ 20} Loc.R. 29 of the Toledo Municipal Court states:
 {¶ 21} "(A) In a civil case, when the defendant is in default for appearance or answer, judgment shall be rendered in accordance with Rule 55(A) of the Ohio Rules of Civil Procedure."
 {¶ 22} Civ.R. 55(A) provides, in pertinent part:
 {¶ 23} "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefor * * *. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served withwritten notice of the application for judgment at least seven days priorto the hearing on such application." (Emphasis added.)
 {¶ 24} Indeed, when a defendant who fails to timely file an answer has otherwise "appeared" in the action, due process requires that he be served with written notice of application for default judgment seven days prior to the hearing on the merits of the default judgment. AmcaInternatl. Corp. v. Carlton (1984), 10 Ohio St.3d 88. A defendant who files a timely motion for extension to plead is considered to have appeared in the action so as to trigger the seven-day notice requirement of Civ.R. 55(A). Hardware Supply Co. v. Edward Davidson, M.D.,Inc. (1985), 23 Ohio App.3d 145.
 {¶ 25} In this case, appellees filed a timely motion for continuance and indicated in that motion their intent to oppose the eviction. Therefore, we find that for the purpose of Civ.R. 55(A) notice requirements, appellees made an appearance in the proceedings below. However, the record indicates that the mandatory time prescription set out in Civ.R. 55(A) was not observed. The trial court issued the default judgment on the date of the hearing, June 8, 2000, and the writ of restitution five days later. Inasmuch as Civ.R. 55(A) was not observed by the trial court, the entry of default judgment was improper.
 {¶ 26} Although, in this case, the trial court proceeded to trial on both the first and second causes of action, despite the default judgment entry, we cannot say with certainty that the outcome would have been the same had appellees been given proper notice of the first cause of action with regard to the default judgment. Furthermore, since consideration of the second cause of action naturally flows from the disposition of the first cause of action, we rule that any judgment regarding damages in this case was premature.
 {¶ 27} Pursuant to our disposition of the first assignment of error, appellant's remaining assignments of error are rendered moot. Accordingly, we need not address them. See App.R. 12(A)(1)(c).
 {¶ 28} On consideration whereof, the June 6, 2000 judgment of the trial court is reversed and the matter remanded to that court for proceedings consistent with this judgment. Costs to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., and Mark L. Pietrykowski,J..